1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LATHROP GPM LLP**
Ronald A. Valenzuela (State Bar No. 210025)
ronald.valenzuela@lathropgpm.com
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Tel: (310) 789-4600 Fax: (310) 789-4601

Richard P. Beem (*pro hac vice*)
richard.beem@lathropgpm.com
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
Tel: (312) 920-3300 Fax: (312) 920-3301

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RODE MICROPHONES, LLC; and FREEDMAN ELECTRONICS PTY LTD., | Case No. 2:23-cv-01082 ODW (KK) |
| Plaintiff, | **PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, ASSET RESTRAINING ORDER, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| v. | |
| FEAM GMBH, | |
| Defendant. | |

# NOTICE OF MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at a date and time to be set by the Court, or as soon thereafter as the matter may be heard, in Courtroom 5D, 5th Floor in the U.S. District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, before the Honorable Otis D. Wright II, Plaintiffs Freedman Electronics Pty. Ltd. ("Freedman") and RØDE Microphones, LLC ("RØDE USA") will, and hereby do, respectfully move *ex parte* for entry of (1) a temporary restraining order (TRO), (2) an asset restraining order, and (2) an order to show cause why a preliminary injunction should not issue against Defendant FEAM GmbH ("FEAM"), pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116.

Prior to filing this Motion, pursuant to Civ. L.R 7-19 and Civ. L.R 65-1(b), Plaintiffs provided notice to FEAM's counsel of their intention to bring this motion, as set forth in the Declaration of Alex Shtraym, attached as Exhibit K. FEAM's known attorneys are:

Mark Berkowitz
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
E-mail:
berkowitz@tarterkrinsky.com

Tyler R. Dowdall
Tarter Krinsky & Drogin LLP
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: (424) 330-8580
E-mail: tdowdall@tarterkrinsky.com

Plaintiffs' petition for e*x parte* relief is appropriate because, unless stopped by this Court, FEAM will continue selling non-genuine, counterfeit RØDE-branded products causing further irreparable harm to Freedman, RØDE USA, authorized RØDE dealers, and consumers. Freedman and RØDE USA's *Ex Parte* Motion seeks an order to restrain and enjoin FEAM from (i) selling products that bear the RØDE Marks (as defined below); (ii) otherwise using the RØDE Marks and/or any other mark, name, designation or likeness that incorporates the RØDE Marks or is

likely to be confusingly similar to the RØDE Marks; (iii) otherwise infringing upon the RØDE Marks; and (iv) use of any RØDE Marks, including in any listings, such as through FEAM's da Lorenzo shop on any online commerce platform and on any product packaging. Further, to preserve their right to an accounting and recovery of damages, Freedman and RØDE respectfully request that the Court freeze FEAM's U.S. assets.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Jesse Dean (Exh. A) filed in Support of this Motion, including the Exhibits referenced therein and filed herewith; the Proposed Order submitted in support of this Motion; the Complaint and record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated: June 2, 2023                          Respectfully submitted,

**LATHROP GPM LLP**

By: */s/ Ronald Valenzuela*
Ronald A. Valenzuela (No. 210025)
LATHROP GPM LLP
2049 Century Park East
Los Angeles, CA 90067
Ronald.Valenzuela@lathropgpm.com
Tel: (310) 789-4600
Fax: (310) 789-4601

Richard P. Beem (*pro hac vice*)
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
richard.beem@lathropgpm.com
Tel : (312) 920-3300
Fax : (312) 920-3301
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION & BACKGROUND ................................................................. 1

    A.   Freedman's And RØDE's History & Trademarks ................................. 1

    B.   RØDE USA's Substantial Presence in This District ............................ 2

    C.   RØDE USA'S Authorized Dealer Network and Warranty ................... 3

    D.   FEAM's Unauthorized Sale of Products Bearing the RØDE Marks ..................... 5

    E.   FEAM's Continues Its Malicious Campaign Against Freedman and RØDE by Filing Suit in New Jersey and Continues to Confuse Consumers by Listing Additional Non-Genuine RØDE-Branded Products For Sale Without Authorization ........................................................ 7

II.  ARGUMENT .................................................................................................... 8

    A.   This Court is the Proper Jurisdiction and Venue to Decide This Motion ............... 9

    B.   Standard For Temporary Restraining Order and Preliminary Injunction ............. 10

    C.   Freedman/RØDE USA Are Likely to Succeed on the Merits ............................... 11

        1.   The First Sale Doctrine Does Not Apply ................................... 11

        2.   FEAM's Infringement of the RØDE Marks ............................... 13

            a.   Freedman Has a Protectible Ownership Interest in the RØDE Marks. ...................... 14

        3.   Consumer Confusion May be Presumed. ................................. 14

        4.   The *Sleekcraft* Factors Also Tip in Favor Of Plaintiffs ............ 15

            a.   Strength of the RØDE Marks ................................... 16

            b.   Proximity of the RØDE Products ............................. 16

            c.   Similarity Between the Marks ................................... 17

            d.   Evidence of Actual Confusion .................................. 17

            e.   Same Marketing Channels ....................................... 17

            f.   Type of Goods and Purchasers' Likely Degree of Care ............... 18

            g.   FEAM's Intent in Selecting the RØDE Marks .......... 18

            h.   Likelihood of Expansion of the Product Lines ......... 19

LATHROP GPM LLP
ATTORNEYS AT LAW

PLAINTIFFS' EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER

i

D.      Plaintiffs Are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief for which there is No Adequate Legal Remedy ........................................... 19

E.      The Balance of Equities Sharply Tips in Favor of Plaintiffs ................................ 20

F.      Injunctive Relief Serves the Public's Interest ........................................................ 21

G.      FEAM's U.S. Assets Should Be Frozen ................................................................. 21

H.      A Bond, If Any, Should be Nominal....................................................................... 22

CONCLUSION ........................................................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lathrop GPM LLP
Attorneys at Law

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................ 10

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................ 15, 16, 17, 19

*Apple Computer, Inc. v. Formula Int'l Inc.*,
    725 F.2d 521 (9th Cir. 1984) ................................................................ 19

*Bel Canto Design, Ltd. v. MSS Hifi, Inc.*,
    837 F. Supp. 2d 208 (S.D.N.Y. 2011) .................................................. 12

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
    562 F.3d 1067 (10th Cir. 2009) ........................................................... 12

*Brookfield Commc'ns., Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .............................................. 14, 16, 18

*DC Comics v. Towle*,
    989 F. Supp. 2d 948 (C.D. Cal. 2013) ................................................. 13

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) .............................................................. 13

*El Greco Leather Prods. Co, Inc.. v. Shoe World, Inc.*,
    806 F.2d 392 (2d Cir. 1986) ................................................................ 16

*Enesco Corp. v. Price/Costco Inc.*,
    146 F.3d 1083 (9th Cir. 1998) .............................................................. 15

*FEAM GmbH v. Freedman Electronics Pty Ltd et al.*,
    Civil Action No. 2:23-cv-00747-SDW-JSA (D.N.J., filed Feb. 8,
    2023) ....................................................................................................... 3

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    314 F.2d 149 (9th Cir. 1963) ................................................................ 19

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) .......................................................... 16, 18

L<small>ATHROP</small> GPM LLP
A<small>TTORNEYS AT</small> L<small>AW</small>

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*,
 415 U.S. 423 (1974) .............................................................................. 10

*Iberia Foods Corp. v. Romeo*,
 150 F.3d 298 (3d Cir. 1998) ................................................................ 12

*Johnson v. Couturier*,
 572 F.3d 1067 (9th Cir. 2009) ............................................................ 22

*Johnson v. Macy*,
 145 F. Supp. 3d 907 (C.D. Cal. 2015) ................................................ 10

*Jorgensen v. Cassiday*,
 320 F.3d 906 (9th Cir. 2003) .............................................................. 22

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
 408 F.3d 596 (9th Cir. 2005) .............................................................. 14

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
 658 F.3d 936 (9th Cir. 2011) .............................................................. 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) .............................................................. 19

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*,
 112 F.3d 1296 (5th Cir. 1997) ............................................................ 12

*Maxim Integrated Prods., Inc. v. Quintana*,
 654 F. Supp. 2d 1024 (N.D. Cal. 2009) .............................................. 21

*Mercado Latino, Inc. v. Indio Products, Inc.*,
 No. CV 13-01027 DDP RNBX, 2013 WL 5352713 (C.D. Cal. Sept.
 24, 2013) ............................................................................................... 12

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
 638 F.3d 1137 (9th Cir. 2011) ............................................................ 13

*New West Corp. v. NYM Co. of California, Inc.*,
 595 F.2d 1194 (9th Cir. 1997) ............................................................ 14

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
 920 F.2d 187 (3d Cir. 1990) ................................................................ 20

*PACCAR Inc. v. TeleScan Techs., LLC*,
 319 F.3d 243 (6th Cir. 2003) .............................................................. 13

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
   970 F.2d 552 (9th Cir. 1992) ............................................................... 21

*RFA Brands, LLC v. Beauvais*,
   No. 13-14615, U.S. Dist. LEXIS 181781 ............................................... 12

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ............................................................... 18

*TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*,
   843 F.Supp.2d 1284 (S.D. Fla. 2012) ................................................... 11

*Vertos Med., Inc. v. Globus Med., Inc.*,
   No. C 09-1411 PJH, 2009 WL 3740709 (N.D. Cal. Nov. 6, 2009) .................. 20

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
   106 F.3d 894 (9th Cir. 1997) ............................................................... 15

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 10

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
   No. 00-3183, 2001 WL 897452, *3 (6th Cir. July 31, 2001) ........................ 9

**Statutes and Other Authorities**

15 U.S.C. § 1117 ....................................................................................... 21

Wright & Miller, Federal Practice and Procedure (4th ed.) § 3848 .................... 9

**Court Rules**

Fed. R. Civ. P. 64 ..................................................................................... 22

Fed. R. Civ. P. 65 ............................................................................... 21, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION & BACKGROUND

This case centers around Defendant FEAM's unauthorized sale of non-genuine, counterfeit goods bearing Plaintiff Freedman's federal trademark registrations including the consumer and industry recognized RØDE marks. *See* Decl. of Jesse Dean at ¶¶ 8-17, attached as Exhibit A.

### A.     Freedman's And RØDE's History & Trademarks

Freedman started as a small electronics shop in Australia in 1967 and, with exponential growth, continues to operate and to manufacture in or near Sydney, in New South Wales, Australia. Exh. A, ¶ 4. In 1990, based on the surging demand for affordable, high-quality audio recording equipment, Freedman launched the RØDE brand and established the subsidiary RØDE Microphones, LLC (RØDE USA), based in Signal Hill (Los Angeles) California. Exh. A, ¶¶ 4-5.

Within just a few years, RØDE became the world's preeminent brand of audio equipment embodying new and improved technology.  Exh. A, ¶¶ 10-12. Unlike more costly audio equipment used in professional film and television, most RØDE products are intended for purchase and use by content creators who are highly conscious of both cost and quality. Exh. A, ¶ 13. RØDE's build quality, brand experience, and industry-leading warranty are a major factor in the sales of these products. *Id.*

Freedman manufactures RØDE products in Australia from its state-of-the-art facilities, which include over 500 million dollars' worth of precision machinery. Exh. A, ¶ 6. RØDE products are sold to customers in at least 118 countries, including the United States, through Freedman's authorized distributor system and each RØDE product is carefully monitored for quality control throughout the world. Exh. A, ¶¶ 6-7. Capitalizing on its Australian manufacturing and R&D, Freedman has a global footprint with offices around the world. Exh. A, ¶ 6.

RØDE USA is Freedman's sole, exclusive, authorized distributor for the

Americas. *See* Exh. A, ¶ 8. All RØDE products that enter the U.S. do so through the Port of Los Angeles or LAX Airport and are then transported to RØDE USA's receiving facilities located in California. Exh. A, ¶ 9. Critically to the conduct and the merits of this litigation, RØDE USA also handles all warranty repairs and maintenance for products distributed to customers in the United States, Canada, and South America. Exh. A, ¶ 14.

The RØDE brand and reputation are vital to Plaintiffs success. Freedman and RØDE USA have continuously used and registered various U.S. federal trademark registrations (the "RØDE Marks"). Exh. A, ¶¶ 15-21. For example, on June 7, 2011, RØDE USA[1] obtained a federal trademark registration for the mark RØDE, Registration No. 3973968, Exh. A, ¶ 16, Exh. B.  In addition, Freedman owns all right, title, and interest to the design mark that is the subject of Registration No. 4590692, Exh. A, ¶ 17, Exh. C, directed to a gold-colored dot.

Freedman and RØDE USA have invested much time, energy, and capital in marketing, advertising, promoting, and protecting its products offered under the RØDE Marks and the associated goodwill. Exh. A, ¶ 18. Consumers recognize the RØDE Marks as a source identifier for high-quality, affordable audio products backed by the RØDE Warranty and customer support team. Exh. A, ¶¶ 19-20. As a result, the RØDE Marks symbolize and carry the goodwill associated with Plaintiffs and their goods and services. Exh. A, ¶ 21.

**B.      RØDE USA's Substantial Presence in This District**

RØDE USA's principal place of business and sole physical location within the U.S. is at 2745 Raymond Avenue, Signal Hill, California ("Headquarters"). Exh. A, ¶ 22. All business operations are conducted from Headquarters, including the receipt of RØDE products that enter the U.S. Exh. A, ¶¶ 23, 25. Further, all other RØDE USA employees operate from Headquarters. Exh. A, ¶ 27.

---

[1] On September 19, 2013, RØDE assigned all right, title, and interest in and to the '968 Registration to Freedman, which currently owns it.

As mentioned above, RØDE products are received at Headquarters in California from Freedman in Australia. The main building bears the RØDE Registration with the ® symbol and consists of office and warehouse space. Exh. A, ¶ 24; Exh. D. In this facility all operations in-bound and out-bound for national and international distribution are conducted. Every day, many shipping company trucks can be seen coming to and going from Headquarters for distribution through the U.S. Exh. A, ¶ 26.

In addition to distribution, all RØDE Warranty returns, repairs, replacements, and customer support activities for the Americas are handled by employees at Headquarters in California. Exh. A, ¶ 29. Other business operations conducted at Headquarters include quality control, R&D, and product assemblies. Exh. A, ¶ 30.

Freedman/RØDE USA do not have any offices or any facilities in the Americas outside of Signal Hill, California. Exh. A, ¶ 31. Further, Plaintiffs lack any real presence or connections in any other jurisdiction including New Jersey, which is where FEAM filed a parallel action, *FEAM GmbH v. Freedman Electronics Pty Ltd et al.*, Civil Action No. 2:23-cv-00747 (D.N.J., filed Feb. 8, 2023). Remarkably, none of the parties to that action are New Jersey individuals or companies. Exh. A, ¶ 31. Indeed, FEAM, a Switzerland-based entity, has no ties to New Jersey apart from its counsel apparently being a member of the New Jersey bar.

In sum, RØDE USA's substantial presence is within this District. As RØDE USA is the only U.S. based company in this and related disputes between the parties, proper venue, as well as personal jurisdiction, lies in this Court.

## C.     RØDE USA'S Authorized Dealer Network and Warranty

As mentioned above, Freedman and RØDE USA have numerous trademarks registered worldwide and with the U.S. Patent and Trademark Office. Based on Plaintiffs' continuous and exclusive use of these trademark registrations, consumers closely associate the RØDE Marks as a source identifier for high-quality and

1    affordable audio products backed by the RØDE Warranty. Exh. A, ¶¶ 20-21.

2        To protect the goodwill associated with its brand, Plaintiffs operate an

3    Authorized Dealer Network. Exh. A, ¶ 32. Products sold through the RØDE

4    Authorized Dealer Network are backed by an award-winning, industry-leading

5    warranty (the "RØDE Warranty"). Exh. A, ¶ 33; Exh. E. The RØDE Warranty –

6    which often includes an unparalleled lifetime warranty – is offered to consumers

7    that purchase *genuine* RØDE products through *authorized* dealers, and because of

8    the cost and complexity of audio devices, this warranty is highly valued by RØDE

9    customers. Exh. A, ¶ 34.

10        Critically to the merits of this litigation, the RØDE Warranty is not extended

11   to products bearing the RØDE brand purchased from unauthorized sellers – such as

12   FEAM, which sells what appear to be official RØDE products but are *not genuine*

13   *or authorized*, and which *do not come with* the coveted RØDE Warranty. Exh. A, ¶

14   37.

15        Resellers of products bearing the RØDE Marks must apply and be accepted

16   to the Authorized Dealer Network. Exh. A, ¶ 38. If accepted, resellers must comply

17   with stringent quality control measures, including: "Reseller must sell all RØDE

18   products in their original packaging and cannot alter the product's labels or

19   packaging." Exh. A, ¶ 39; *see also* Exh. F.

20        Such quality control measures are legitimate, substantial, and vital to

21   Freedman, RØDE USA, authorized dealers, and consumers. Exh. A, ¶¶ 42-43. To

22   ensure continued compliance, Plaintiffs periodically audit members of the

23   Authorized Dealer Network. Exh. A, ¶ 41. Resellers that fail to comply with

24   RØDE's quality control measures are removed or suspended from the Authorized

25   Dealer Network, such that further sales of products bearing the RØDE Marks are

26   unauthorized.

27        As mentioned above, RØDE products not sold through the Authorized Dealer

28   Network are not backed by the RØDE Warranty. Exh. A, ¶ 44.  Consumer reviews

LATHROP GPM LLP
ATTORNEYS AT LAW

indicate that it is highly relevant to their purchasing decision whether the products come from an authorized dealer especially because they covet the RØDE Warranty. Exh. A, ¶ 45.

**D.     FEAM's Unauthorized Sale of Products Bearing the RØDE Marks**

While monitoring online sales, Plaintiffs discovered FEAM's unauthorized sale of various of RØDE-branded products. Exh. A, ¶ 46.

When FEAM was confronted with the facts of its infringement and counterfeiting, rather than cease and desist as requested in counsel's February 7, 2023, letter (see Exh. G at 2), FEAM brazenly filed the above-referenced complaint in New Jersey, ignoring the fact that none of the parties have minimum contacts there.

According to its complaint, FEAM is a limited liability company organized and existing under the laws of Switzerland. FEAM does not appear to have any internet presence other than through its alter ego Amazon.com storefront titled "Da Lorenzo Shop" or any physical presence in the U.S.

FEAM is not a member of the Authorized Dealer Network – and thus it is not authorized to sell or resell RØDE products. Exh. A, ¶ 47. As a result, the products FEAM sells bearing the RØDE Marks do not come with the RØDE Warranty, which is a material difference relevant to a consumer's purchasing decision. *Id.* In other words, FEAM's sale of non-genuine RØDE-branded products is a blatant infringement of the RØDE Marks.

FEAM has listed and continues to list non-genuine RØDE products for sale on its Amazon.com storefront. For instance, in January 2023 alone, FEAM offered at least thirteen different RØDE-branded products for sale on its storefront. Exh. A, ¶ 48.

Upon further investigation, Plaintiffs discovered that products listed by FEAM falsely used a unique identifier – ASIN number – affiliated with RØDE's authentic products, thereby suggesting that FEAM is a member of the Authorized

Dealer Network or otherwise associated with Freedman or RØDE USA. Exh. A, ¶ 49. FEAM's use of RØDE's ASIN numbers falsely connect to a "Product Documentation" link, which provides detail regarding the RØDE Warranty. Exh. A, ¶ 50. As a result, consumers are misled into believing that the products they purchase from FEAM come with the RØDE Warranty, which they do not. *Id.*

In response to FEAM's ongoing infringement, on January 21, 2023, Jesse Dean, acting in his role as Director of Business Development, filed, on behalf of RØDE USA, complaints with Amazon.com regarding several unauthorized listings on FEAM's storefront. Exh. A, ¶ 50.

Following Mr. Dean's accurate complaints, Amazon delisted the infringing products. Exh. A, ¶ 58. Notwithstanding Mr. Dean's painstaking, piecemeal removal of FEAM's infringing listings, FEAM has continued its campaign to harm Plaintiffs and their customers by knowingly selling non-genuine RØDE-branded products. Exh. A, ¶ 60. Consumer reviews of FEAM's e-commerce shop show that FEAM has sold "counterfeit" goods, Exh. A, ¶ 57; Exh. H, and FEAM has refused to identify the source of its RØDE-branded products. Exh. A, ¶ 64.

Between February 20, 2023 and March 20, 2023, RØDE USA employees purchased a total of four products sold by FEAM through its e-commerce shop. Exh. A, ¶ 53. Because it can be difficult to tell the difference between genuine RØDE products and those made by a counterfeiter – often requiring examining each computer chip, Plaintiffs could not determine whether the test purchases are new products made by Freedman, used, altered or defective products, or complete fakes. Exh. A, ¶¶ 55-56.

That said, two distinguishing characteristics of FEAM's offering are certain. Exh. A, ¶ 56. First, FEAM had re-stickered or altered the original packaging to, among other things, conceal the unique product serial number, which consumers need to register each RØDE product. Exh. A, ¶¶ 35, 56; Exh. I. Secondly, FEAM's sale of RØDE products did not come with the RØDE Warranty. Exh. A, ¶ 56.

In sum, when consumers purchase FEAM's non-genuine RØDE products that do not come with the RØDE Warranty, the consumer are likely to associate the negative experience with Plaintiffs. Exh. A, ¶ 61. Further, the reputation and goodwill associated with the RØDE Marks is damaged when consumers submit faulty warranty claims for non-genuine products distributed by unauthorized sellers such as FEAM. *Id.*

**E.     FEAM's Continues Its Malicious Campaign Against Freedman and RØDE by Filing Suit in New Jersey and Continues to Confuse Consumers by Listing Additional Non-Genuine RØDE-Branded Products For Sale Without Authorization.**

On February 7, 2023, in response to RØDE USA's removal of RØDE-branded products listed on FEAM's shop, FEAM's counsel sent Mr. Dean an email threating legal action. Exh. A, ¶ 62. That same day, counsel for Plaintiffs responded to FEAM's counsel demanding that it cease and desist from the unauthorized use of the RØDE Marks unless FEAM can prove that it is an authorized dealer and that the products it sells lack material differences. Exh. A, ¶ 63. FEAM refused to provide any information about the source of its RØDE-branded products. Exh. A, ¶ 64.

Instead, as mentioned above, on February 8, 2023, FEAM filed suit in New Jersey, *supra*, seeking to prevent Freedman and RØDE USA from exercising their legal rights as the owner and exclusive U.S. licensee of the RØDE Marks and RØDE's Authorized Dealer Network. Exh. A, ¶ 65.

In addition to the various defects in FEAM's ill-based lawsuit, the fact is that Plaintiffs filed the instant case on February 13, 2023 (within days of FEAM's filing) in this district and immediately notified and sent a file-stamped copy of the instant complaint to FEAM's counsel, all before FEAM even notified Plaintiffs of filing its complaint in New Jersey.

Since then, FEAM has continued to list and sell RØDE-branded products on the Internet, without authorization. Exh. A, ¶ 66. For instance, as of May 31, 2023,

FEAM has listed and is selling at least six products bearing the RØDE Marks on its e-commerce shop. Exh. J. Based on FEAM's conduct and its refusals to honor Plaintiffs' trademarks and legitimate requests, it is clear than unless restrained and enjoined by the Court, FEAM will continue to make unauthorized sales of RØDE-branded products in the future, despite not being a member of the Authorized Dealer Network, and despite inability to offer the RØDE Warranty, none of which material deficiencies are apparent to consumers. Exh. A, ¶ 67.

Plaintiffs have acted promptly and diligently in filing and prosecuting the instant action. Because FEAM's counsel did not even respond to Freedman/RØDE's request that FEAM waive service, Plaintiffs immediately undertook and completed service on FEAM under the Hague Convention. On May 2, 2023, FEAM appeared in this Court through counsel, *see* ECF 14, and on May 15, 2023, FEAM waived all defenses pertaining to service, *see* ECF 16. Now that FEAM is properly before this Court, Plaintiffs have promptly and diligently prepared and filed the instant motion for temporary and preliminary injunction.

In sum, unless stopped by this Court, FEAM conduct will cause further irreparable harm to Freedman, RØDE USA, authorized dealers, and consumers.

## II.   ARGUMENT

FEAM's purposeful and unlawful conduct is causing, and unless restrained and enjoined, will continue to cause irreparable harm to Freedman and RØDE USA's reputation and the goodwill symbolized by the RØDE Marks. FEAM has willfully violated Plaintiffs' trademark rights, and it continues to do so, by selling non-genuine products bearing the RØDE Marks and misleading consumers into believing such sales are authorized or associated with Plaintiffs. Exh. A, ¶¶ 49, 50.

To stop FEAM's unauthorized use of the RØDE Marks, Plaintiffs respectfully request that this Court restrain and enjoin FEAM's sale of non-genuine RØDE products and issue an order freezing FEAM's U.S. assets. Without the relief requested, FEAM's illegal activities would continue unabated, and Freedman,

RØDE USA, authorized dealers, and consumers would suffer irreparable harm. Exh. A, ¶ 67.

### A.  This Court is the Proper Jurisdiction and Venue to Decide This Motion

As a threshold matter, it can be expected that FEAM will argue that its aggressive filing of its counterpart complaint in the New Jersey, *supra*, should somehow trump Plaintiffs' filing of the instant civil action. Such argument should be rejected, because FEAM knew none of the parties had minimum contacts with New Jersey.

FEAM has not moved to dismiss the instant complaint, and even if it were to do so, the inevitable outcome would be for this civil action to continue. It is FEAM's New Jersey complaint that should be dismissed, or at best for FEAM, transferred to this venue. There is no reason for this Court to wait before issuing a TRO and an order to show cause why a preliminary injunction should not issue.

The general rule that the first-to-file a complaint in a proper jurisdiction and venue does not apply here, because the District of New Jersey lacks jurisdiction over at least two of the three defendants that FEAM chose to name in its complaint. *See* Wright & Miller, Federal Practice And Procedure (4th ed.) § 3848 (plaintiff's choice of forum is entitled to less weight where the chosen forum is neither plaintiff's home nor the situs of the occurrence upon which the suit is based); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.,* No. 00-3183, 2001 WL 897452, *3 (6th Cir. July 31, 2001) (plaintiff does not have a right to bring a declaratory judgment action in the forum of his choosing).

Moreover, FEAM's took no steps to serve or even to notify Freedman/RØDE or counsel of the filing of its New Jersey complaint until after Plaintiffs filed this civil action and notified FEAM's counsel of the same. *See* Exh. G at 1.

Everything about the conduct of this litigation shows that FEAM's filing of its New Jersey complaint was less than serious – it refused to cooperate with

respect to service and made no real attempt to serve Freedman/RØDE/Jesse Dean, all of which it named as defendants, along with threatening to sue any other individual it could identify (see NJ complaint, ¶ 51). In contrast, Plaintiffs promptly and diligently completed service on FEAM under the Hague Convention, such that FEAM has waived all defenses pertaining to service.

FEAM has appeared in this Court, through counsel, and this Court should not hesitate to exercise jurisdiction over the infringer/counterfeiter.

### B. Standard For Temporary Restraining Order and Preliminary Injunction

"The standards for a temporary restraining order and a preliminary injunction are the same." *Johnson v. Macy*, 145 F. Supp. 3d 907, 913 (C.D. Cal. 2015). A TRO "preserv[es] the status quo and prevent[s] irreparable harm" until a hearing can occur regarding whether a preliminary injunction should issue. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

In order to obtain injunctive relief, a plaintiff must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit recognizes a sliding scale of the factors, where "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Each of the four *Winter* factors tips in Plaintiffs' favor. FEAM has maliciously executed a campaign to harm Plaintiffs and to misappropriate its business and customers by knowingly selling non-genuine RØDE-branded products. The balance of hardships thus falls decisively in favor of the issuance of

interim relief, and such relief would fully serve the public interest. As such, the Court should grant Plaintiffs' motion for TRO and preliminary injunction.

### C.    Freedman/RØDE USA Are Likely to Succeed on the Merits

The evidence before the Court demonstrates a probability of success and certainly raises at least serious questions that warrant deliberate investigation. As such, the Court should find that Plaintiffs are more than likely to succeed on the merits and weigh this factor in favor of awarding injunctive relief.

### 1.    The First Sale Doctrine Does Not Apply

FEAM attempts to justify its sale of non-genuine RØDE products bearing the RØDE Marks by relying on the first sale doctrine. Under the first sale defense, resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition.

Here, however, the first sale doctrine does not apply. First, FEAM has declined to identify the source of its goods. Exh. A, ¶ 59. If it contends that it bought such goods from an authorized RØDE dealer, it should produce the name of the alleged dealer and proof of its purchases with evidence and a sworn declaration.[2]

Second, and even more basic, the first sale doctrine "does not apply when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F.Supp.2d 1284, 1296-97 (S.D. Fla. 2012).

FEAM's sales of purported RØDE products constitute counterfeiting: Its acts are deceptive, because purchasers are unaware (1) that they are dealing with an unauthorized source and (2) that FEAM does not and cannot offer the industry-leading official RØDE Warranty. Of particular concern are FEAM's deliberate

---

[2] FEAM has been warned that authorized RØDE dealers are prohibited from reselling RØDE products for resale; its continued purchases and efforts to purchase from dealers are likely to constitute tortious interference with contract and may be grounds for amendment of Freedman/RØDE USA's complaint.

efforts to avoid disclosing material differences, such as pertaining to warranty, coupled with its reduced pricing, is a clear attempt to deceive consumers and create confusion.  Exh. A, ¶ 50.

The material difference exception to the first sale doctrine is expressly recognized in the Ninth Circuit. *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir. 1998) (holding that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"); *Mercado Latino, Inc. v. Indio Products, Inc.*, No. CV 13-01027 DDP RNBX, 2013 WL 5352713, at *3 (C.D. Cal. Sept. 24, 2013) ("non-conforming product should not be considered genuine, and the first sale doctrine will not apply.").

Courts applying the material difference exception find that materially different products that bear the same trademark may confuse consumers and erode consumer goodwill. *See Iberia Foods Corp. v. Romeo, 150 F.3d 298,* 303 (3d Cir. 1998). A difference is material if consumers would consider it "relevant to a decision about whether to purchase a product. Because many factors influence such considerations, the threshold must be kept low to include even subtle differences between products." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009).

Minor alterations of a product that void a warranty (or in this case comes without the RØDE Warranty that the customer expects) or otherwise affects the services attendant to a trademarked product constitute a material difference barring a defense under the first sale doctrine. *See Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 231 (S.D.N.Y. 2011) (alteration of serial numbers on product which voided the warranty constituted a material difference); *Beltronics*, 562 F.3d at 1073 (alteration of serial numbers which voided product warranty and eliminated eligibility for other services constituted a material difference).

Further, FEAM also bears the burden of proving that the products at issue were "lawfully purchased before it may invoke the first sale defense." *RFA Brands,*

*LLC v. Beauvais*, No. 13-14615, U.S. Dist. LEXIS 181781, at *19. Even then, the defense is unavailable "when the reseller used the trademark in a manner likely to cause the public to believe the reseller was part of the producer's authorized sales force." *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 257 (6th Cir. 2003).

Here, FEAM cannot succeed in proving a first sale defense for at least three reasons. First, FEAM is selling purported RØDE products that are materially different from those sold by Plaintiffs and their authorized dealers. Exh. A, ¶ 53. RØDE products purchased from an authorized dealer come with the coveted official RØDE Warranty, but that warranty is unavailable to consumers who buy from FEAM. Exh. A, ¶¶ 34, 37. Second, FEAM will not be able to carry its burden of proving that the purported RØDE products it has sold and continues to sell were lawfully purchased or that it can lawfully resell these products. Exh. A, ¶ 59. Lastly, FEAM's e-commerce shop falsely uses a unique identifier affiliated with authentic RØDE products, thereby misleading consumers by suggesting that FEAM is an authorized seller of RØDE products or otherwise associated with Plaintiffs. Exh. A, ¶ 50.

Accordingly, the first sale defense does not apply and the only way to stop FEAM from continuing to cause consumer confusion is to restrain and enjoin its sales of RØDE products.

### 2. FEAM's Infringement of the RØDE Marks

To succeed on its trademark infringement claims, Plaintiffs must show (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

Under the Lanham Act, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *DC Comics v. Towle*, 989 F. Supp. 2d 948, 960 (C.D. Cal. 2013); *see also E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir. 1992). Plaintiffs also may recover under this

same showing for false advertising (Count II), unfair competition (Count III), and trademark infringement/unfair competition under California common law (Counts IV and V). *See New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997).

### a.    Freedman Has a Protectible Ownership Interest in the RØDE Marks.

As mentioned above, Freedman has registered the RØDE Marks and, through its wholly owned subsidiary RØDE USA, has continuously used these marks for twenty years. Exh. A, ¶¶ 16, 17.

Federal trademark registrations are "*prima facie* evidence of the validity" of the RØDE Marks, as well as of Plaintiffs' exclusive right to use the RØDE Marks in commerce in connection with the specified goods . *Brookfield Commc'ns., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

Accordingly, Plaintiffs have a protectable ownership interest in the RØDE Marks.

### 3.    Consumer Confusion May be Presumed.

It is undisputed that FEAM has engaged and continues to engage in the unauthorized sale of products bearing the RØDE mark. Consumer reviews related to FEAM's sales on at least one e-commerce platform show not just likely, but actual consumer confusion.

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005). Moreover, because counterfeit marks are inherently confusing, likelihood of confusion is presumed. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) (noting that a presumption of confusion arises where "intent to cause confusion is coupled with the use of a counterfeit mark or a mark virtually identical

to a previously registered mark").

Here, Plaintiffs have confirmed that FEAM has sold and continues to sell numerous non-genuine RØDE products bearing the RØDE Marks in misleading packaging including counterfeit labels. Exh. A, ¶ 54; Exh. I. FEAM has failed to produce any evidence to show that its sales are not counterfeits, such as evidence of lawful purchase of the products from Plaintiffs, that FEAM is an authorized dealer, or that the products lack material differences. Exh. A, ¶ 59.

Therefore, in additional to actual consumer confusion, the Court should presume likelihood of confusion. Even if FEAM's could somehow demonstrate that its sales are not counterfeits, the fact remains that goods distributed without the rights holder's authorization are not "genuine." *See El Greco Leather Prods. Co, Inc.. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986) (goods sold without the company's approval found not "genuine" under the Lanham Act); *see also Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997) (holding that when "an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit'").

As discussed above, the products FEAM has sold and continues to sell are materially different from those sold by Freedman, RØDE, and their authorized sellers. Exh. A, ¶ 53. FEAM deliberately avoids disclosing these differences and purposefully prices its unauthorized listings below those within RØDE's Authorized Dealer Network. Exh. A, ¶ 50. Therefore, such goods are not genuine within the meaning of the Lanham Act and consumer confusion is presumed.

### 4.    The *Sleekcraft* Factors Also Tip in Favor Of Plaintiffs

Even if the presumption of likelihood of confusion did not apply – and it does – the evidence shows that FEAM's sales have caused, and are likely to continue to cause, consumer confusion. Exh. A, ¶ 60; *see also* May 31, 2023 screenshot of FEAM's e-commerce shop on Amazon.com, Exh. J.

1   The Ninth Circuit applies the eight-factor *Sleekcraft* test to gauge the

2   likelihood of consumer confusion: 1) strength of the mark; 2) proximity of the

3   goods; 3) similarity between the marks; 4) evidence of actual confusion; 5)

4   similarity in marketing channels; 6) type of goods and degree of care; 7)

5   defendant's intent in selecting the mark; and 8) likelihood of expansion of the

6   product lines. See *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.

7   1979).

8   Here, an analysis of the *Sleekcraft* factors establishes a strong likelihood of

9   confusion.

10   ### a.   Strength of the RØDE Marks

11   It is well known that strong marks, such as the RØDE Marks, are afforded

12   greater protection. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174

13   F.3d 1036, 1058 (9th Cir. 1999). Determining a mark's strength requires evaluating

14   its "conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney*

15   *Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

16   The RØDE Marks require no imagination to form an association between the

17   mark and its source. It is precisely the strength of the RØDE Marks and the

18   associated goodwill that attracts would-be infringers, like FEAM, who seek only to

19   profit from Plaintiffs' efforts. Exh. A, ¶¶ 18-21.

20   Accordingly, the first factor weighs in favor of Freedman and RØDE USA.

21   ### b.   Proximity of the RØDE Products

22   The second factor also heavily favors Plaintiffs because the products sold by

23   FEAM on compete directly with genuine RØDE products. "When the goods

24   produced by the alleged infringer compete for sales with those of the trademark

25   owner, infringement usually will be found." *Sleekcraft*, 599 F.2d at 348.

26   As mentioned above, FEAM's e-commerce shop falsely uses a unique

27   identifier such that its non-genuine products are associated with genuine RØDE

28   products. Exh. A, ¶¶ 49-50. Accordingly, there can be no doubt that the second

1  factor weighs in favor of a finding of likelihood of confusion.

2            **c.**     **Similarity Between the Marks**

3        FEAM's sale of non-genuine RØDE products not only display the RØDE

4  Marks, but also are distributed in counterfeit packaging including re-stickered or

5  altered labels. Exh. A, ¶ 54; Exh. I. This factor also strongly supports the likelihood

6  of Plaintiffs' ultimate success on the merits and consumer confusion.

7            **d.**     **Evidence of Actual Confusion**

8        Customer feedback regarding FEAM's sales of RØDE-branded products has

9  already established that consumers are actually confused as to the source, nature,

10  and quality of the goods. "Evidence that use of the two marks has already led to

11  confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d

12  at 352.

13        Indeed, the consumer reviews on at least one e-commerce platform

14  demonstrate that certain consumers believe that FEAM has sold "counterfeit"

15  goods. Exh. H. Similarly, numerous consumers have contacted Plaintiffs in efforts

16  to submit warranty claims for non-genuine products distributed by unauthorized

17  sellers, like FEAM. Exh. A, ¶ 61.

18        There is no doubt that consumers buying non-genuine RØDE products,

19  commenting on them, or even reviewing them believe that Plaintiffs intended for

20  these products to be in the marketplace. Exh. A, ¶ 49. That alone is evidence of

21  confusion. Indeed, the harm is not just to Plaintiffs and its consumers, but

22  authorized sellers suffer from FEAM actions and the resulting negative consumer

23  feedback. Exh. A, ¶¶ 38-40.

24        This evidence of actual confusion tips sharply in favor of Plaintiffs.

25            **e.**     **Same Marketing Channels**

26        Both genuine RØDE products and non-genuine products sold by FEAM were

27  and continue to be sold online – thus, the marketing channels are the same. The

28  Internet "as a marketing channel, is particularly susceptible to a likelihood of

1   confusion," especially because "it allows for competing marks to be encountered at
2   the same time, on the same screen." *GoTo.com*, 202 F.3d at 1207.

3       Therefore, this factor also weighs in favor of a finding of likelihood of
4   confusion.

5               **f.      Type of Goods and Purchasers' Likely Degree of Care**

6       Consumers closely associate the RØDE Marks with high-quality and
7   affordable products backed by the RØDE Warranty. Exh. A, ¶ 43. Most RØDE
8   products are intended for use by content creators, such as YouTube do-it-
9   yourselfers, vloggers, and the like. Exh. A, ¶ 13.

10      Typically, when it comes to finding the best deal, online consumers do not
11  exercise a high degree of care. In analyzing the degree of care, the question is
12  whether a "reasonably prudent consumer" would take the time to distinguish
13  between the two products. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625,
14  634 (9th Cir. 2005). Consumers are less likely to exercise care when purchasing
15  inexpensive products, thereby "making confusion more likely." *Brookfield*, 174
16  F.3d at 1060

17      Here, given the relatively low price of products, FEAM's reduced pricing on
18  non-genuine RØDE products that do not come with the RØDE Warranty, the
19  inability of consumers to distinguish between the products, and FEAM's deliberate
20  efforts to avoid disclosing these differences, consumers are not likely to exercise a
21  high degree of care when purchasing non-genuine RØDE products that FEAM
22  sells. Exh. A, ¶ 50.

23      This factor therefore also weighs in favor of a finding of likelihood of
24  confusion.

25              **g.      FEAM's Intent in Selecting the RØDE Marks**

26      That Defendant intended to profit from infringing on the RØDE Marks
27  cannot reasonably be disputed. Clearly, FEAM adopted the RØDE Marks
28  deliberately to benefit from the goodwill associated with Plaintiffs and its

trademarks. Exh. A, ¶¶ 18-21.

FEAM's misappropriation of the RØDE Marks suggests to consumers that products sold by FEAM are affiliated with, sponsored by, or otherwise approved by Plaintiffs.  Exh. A, ¶ 49. As a result, FEAM's conduct indicates that it expected "confusion and resultant profit." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963).

Accordingly, this factor also weighs in favor of a finding of likelihood of confusion.

### h.      Likelihood of Expansion of the Product Lines

Despite knowing that it is not an authorized dealer, FEAM continues to sell non-genuine RØDE products deliberately. Exh. A, ¶¶ 52, 60. FEAM's actions make clear that, if not enjoined by the Court, it will continue selling RØDE products, thereby further harming Plaintiffs. Exh. A, ¶ 67. As a result, like every other *Sleekcraft* factor, this factor also favors a finding of likelihood of confusion.

In sum, based on either the presumption of confusion or analysis of the *Sleekcraft* factors, the facts here easily establish that Freedman and RØDE USA are likely to succeed on the merits of its Lanham Act claims.

### D.      Plaintiffs Are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief for which there is No Adequate Legal Remedy

Plaintiffs can also easily demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).

Companies are irreparably harmed when counterfeit or infringing goods trade on the reputation of a rights holder and erode its ability to control the quality of the goods bearing its marks. *See Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984) (finding of irreparable harm supported by plaintiff's

1  evidence that it invested "considerable time and money" in developing the products

2  jeopardized by defendants' "wholesale copying"); *Opticians Ass'n of Am. v. Indep.*

3  *Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) (damage to reputation due to

4  defendant's infringement constitutes irreparable injury).

5       Here, the harm is plainly irreparable if FEAM is allowed to continue to sell

6  non-genuine RØDE-branded products. Exh. A, ¶ 67. Plaintiffs have invested

7  enormous resources in protecting the RØDE Marks. Exh. A, ¶ 18. As a result,

8  consumers closely associate the RØDE Marks with high-quality, reliable, and

9  affordable audio products backed by the RØDE Warranty and customer support

10  team. Exh. A, ¶ 19. Given that FEAM has and continues to deliberately mislead

11  consumers by selling non-genuine RØDE products, there can be no doubt that

12  irreparable harm is likely.

13       Such irreparable harm will likely continue unless the Court restrains and

14  enjoins FEAM.

15      **E.**    **The Balance of Equities Sharply Tips in Favor of Plaintiffs**

16       Taken in its entirety, the irreparable harm resulting from FEAM's sale of

17  non-genuine RØDE products in counterfeit packaging, Exh. I, greatly outweighs

18  any harm to FEAM that might come from not having the ability to resell infringing

19  and counterfeit goods. *See, e.g., Vertos Med., Inc. v. Globus Med., Inc.*, No. C 09-

20  1411 PJH, 2009 WL 3740709, at *12 (N.D. Cal. Nov. 6, 2009) (potential

21  irreparable harm to plaintiff outweighed any injury to defendant, who needed only

22  to cease its unauthorized use of the infringing mark).

23       Simply put, FEAM has no legitimate interest in selling products that they are

24  not authorized to sell and that confuse consumers. Exh. A, ¶ 46. In contrast,

25  Plaintiffs have every interest in protecting the RØDE brand and the goodwill

26  generated by products offered under the RØDE Marks.

27       In sum, the balance of equities strongly supports enjoining FEAM's further

28  sale of non-genuine, counterfeit RØDE products.

### F.   Injunctive Relief Serves the Public's Interest

The injunction sought by Plaintiffs is also in the public's interest. Courts often define the public interest as "the right of the public not to be deceived or confused." *Maxim Integrated Prods.*, 654 F. Supp. 2d at 1036.

FEAM's unauthorized sale of non-genuine RØDE products at a reduced-price prey upon consumers who are shopping online. Exh. A, ¶ 50. Such deliberate actions must be enjoined to reduce confusion. FEAM's inability to offer, among other things, the RØDE Warranty constitutes a material difference that is hidden from consumers. Exh. A, ¶ 47.

Accordingly, the public interest also supports issuance of the requested injunctive relief.

### G.   FEAM's U.S. Assets Should Be Frozen

In order to preserve its right to an equitable accounting of FEAM's unauthorized sales, Plaintiffs request an order freezing FEAM's U.S. assets. If such an order is not issued in this case, the anticipated accounting and award of money damages to Plaintiffs might be rendered meaningless.

Plaintiffs have shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claims. As such, Plaintiffs are entitled to an accounting and recovery of profits, damages, and costs from FEAM's infringing actions and unauthorized sales of RØDE products. *See* 15 U.S.C. § 1117.

In *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992), the Ninth Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly stated that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief."

Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets. Fed. R. Civ. P. 64-65. As

1  such, an order freezing FEAM's assets is within the Court's authority and should be

2  granted. Moreover, under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to

3  bind any third parties who are in active concert with FEAM that are given notice of

4  the order to freeze assets.

5       In sum, Plaintiffs have shown a likelihood of success on the merits, an

6  immediate and irreparable harm suffered because of FEAM's infringement and that

7  an order freezing FEAM's U.S. assets is proper to preserve the status quo.

8      **H.**    **A Bond, If Any, Should be Nominal**

9       The Court has wide discretion "as to the amount of security required, *if any*,"

10  when a TRO or preliminary injunction is granted. *Johnson v. Couturier*, 572 F.3d

11  1067, 1086 (9th Cir. 2009). Indeed, the Court may "dispense with the filing of a

12  bond when it concludes there is no realistic likelihood of harm to the defendant

13  from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th

14  Cir. 2003).

15       While Freedman/RØDE USA are prepared to provide such security as the

16  Court might deem appropriate, here, the request for TRO and preliminary

17  injunction is narrow and merely requires FEAM to stop sales of purported RØDE

18  products, i.e., those that infringe, damage, and/or counterfeit the RØDE Marks.

19  Accordingly, a bond, if any is required by the Court, should be in a nominal

20  amount.

21       This is particularly appropriate here because FEAM has been evasive and has

22  refused to identify a source of its offerings and to quantify its sales. *See* Exh. G,

23  email to FEAM's counsel dated February 7, 2023. FEAM has not provided this

24  information or respond in any meaningful way, instead, it brazenly chose to burden

25  the courts with this dispute.

26       Based on the low likelihood of harm to FEAM by a TRO and an injunction

27  that requires it to prevent further infringement and counterfeiting, Plaintiffs request

28  that any such bond not exceed $5,000.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant this Motion for entry of the requested TRO against Defendant and also issue an Order to show cause why the Court should not also grant a preliminary injunction granting the same relief during the pendency of this suit.

Dated: June 2, 2023                                    Respectfully submitted,

**LATHROP GPM LLP**

By: */s/ Ronald Valenzuela*
Ronald A. Valenzuela (No. 210025)
LATHROP GPM LLP
2049 Century Park East
Los Angeles, CA 90067
Ronald.Valenzuela@lathropgpm.com
Tel: (310) 789-4600
Fax: (310) 789-4601

Richard P. Beem (*pro hac vice*)
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
richard.beem@lathropgpm.com
Tel : (312) 920-3300
Fax : (312) 920-3301
*Attorneys for Plaintiffs*